Good morning, ladies and gentlemen. Our first case of the morning is 117200 Robert Harris v. One Hope United. Are you ready to proceed? Now let me argue. Good morning, Your Honors. May it please the Court. My name is Esther Joy Schwartz. I'm from the law firm Estolado Schwartz. And I'm representing this morning One Hope United, which is the defendant, appellant, and also the petitioner in this appeal. I want to thank the Court for accepting our petition and giving me the opportunity to argue this morning. I'd like to thank my amicus defendant, who is not here today, but they also wrote an amicus brief in support of our position. Prior to my argument this morning, I received a lot of phone calls, and we received a lot of ink about this case being accepted by the Supreme Court. Everybody's wishing me good luck, telling me that I'm sort of carrying the weight of the defense bar on privilege issues. But I'm not asking this Court to rule on all aspects of the self-critical analysis privilege. There has been attention about the privilege for years in our federal and in our other courts, and there have been recognition of the kinds of documents that are sought to be protected. I'm limiting the argument today to really the one type of report that we're seeking to protect, and that's the peer review report or packet that was prepared by the defendant after a single incident. I'm not talking about affirmative action studies or corporate studies or statistics, and those involve all other kinds of decisions and weighing of factors. I'm really only looking at the specifics of this case, and even though privilege is decided on a case-by-case basis, we're talking about really a tort action where there's a report done after a loss and whether or not the impressions made by my defendant, which are usually subjective, evaluative, and critical, should be produced to the plaintiff. Now, what happened in this case is very simple. We were asked to produce a document, we took a friendly contempt, and we're now before this Court. The trial judge actually spearheaded our appeal and was very supportive of this privilege but felt constrained because there is no Illinois common law that addresses this and there's no legislative statute that addresses this. The case went up to the first district, and the first district correctly stated that it really had no power to do this, there was no statute, and it also deferred to the second district decisions. But now I'm before your honors. Apparently two are missing, but I'm sure they'll hear the argument. And your collective reasoning and wisdom is what I'm appealing to. Do you have the power and authority to create this privilege? I believe you do. The first place to look is Rule 501, which, if I could read to the Court, states that except as otherwise required by the Constitution of the United States, the Constitution of Illinois, or provided by applicable statute or rule prescribed by the Supreme Court, the privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by Illinois courts in the light of reason and experience. This rule has been decided in 2010 in a small packet by the Supreme Court that is the rules that we're supposed to be referring to, and this came after the Burkett decision and all the decisions cited against us that state that the judiciary really cannot create the common law exception for the privilege and it has to come from the legislature. That is not correct. And I think when this Court reviews Burkett and the decision of Homer and look at Wigmore to the test of when you can create a privilege, you will see that this is something that your collective wisdom is allowed to rule on and actually espouse the new privilege for us. Counsel, you point out in your brief that the legislature has already enacted a version of the self-critical analysis privilege, right, in Section 8-2101 of the Medical Studies Act? Only for hospitals and physicians and parties that qualify under that act. Yeah, and that's my question. Given that the legislature has already acted with respect to the privilege, what authority does this Court have to expand the privilege beyond what the legislature already has allowed? How are we not just legislating at that point? We're not asking to be held to be medical providers. We're not medical providers. The Medical Studies Act, which was enacted in 2003 in response to the Breedist decision and has been enacted in many states, is very limited in its scope to deal with the medical profession. I would be foolish to ask this Court to expand or read an exception into this act. We're not asking for that. We know that there is no act that covers the social service agency. This agency over the years has tried in numerous ways to be held to certain standards that the DCFS has allowed. The DCFS has a privilege to its reports. The DCFS is capped and can't be sued in a state case. The DCFS has sovereign immunity. While the DCFS hires One Hope United to do as an adjunct for the government everything the DCFS does, we get none of the protections. We certainly cannot promulgate a legislative act with the resources that we have. We can only ask the Court to take a look at Wigmore, Burkett, Moore, and look at the four-part test to say, can I create a privilege? So for an example, we look at the Thomas decision. The Thomas versus Page decision in the Second District really speaks to what I'm asking. This Court was subpoenaed to give up its records, to give up its deliberations, to give up deliberations among one another and among the law clerks. There was no statute governing this. There was no rule governing this. The Court asked to create a judicial deliberative privilege, and the Second District, doing the weighing, agreed that it had the power to do that. And that's all we're really asking is that your collective reason and experience is allowed to create a privilege that exists outside of the legislative act, and perhaps years from now it might be codified as Breedis was codified years later by the Medical Studies Act. But my agency doesn't have the resources, as I indicated, to lobby for something that will cover them in all these respects. So you are permitted under the law 501 and the case authority to create this privilege, to make it as narrow as you'd like for the purposes of this case, and then as we ask and as the amicus ask, to come up with a test so that this can be sent back to the trial courts because the issue of privilege is something that the circuit court judges deal with every day. I mean, they have attorney-client privilege, clergy privilege, informant privilege, surveillance privilege. Those are all privileges that have rules and they're in statutes. But there are other kinds that are created, as I just indicated, which is the judicial deliberative privilege. There are collective bargaining privileges that are not in statutes. And all we're asking the court to do is, by analogy to the Medical Studies Act, we are not presuming to be under the act in any way, is to come up with a test. And what is that test? Well, the federal courts have already talked about it at great length, and this court can look to the federal courts to decide how it wants to create this privilege. You do not have to resolve this the way the federal courts do. This is totally up to your honors, but there is a good deal of discussion in our federal courts, particularly the Tice decision, because that was a personal injury case that involved a tort. And prior to Tice there was some argument that these reports should only be protected if they were governmentally mandated. But Tice said, no, there can be a voluntary type of report. And that is exactly what One Hope United does. There is a death, which is a tragic loss, but we need to learn from it. So within days it puts together a quality assurance division that looks over what happened. And their mantra is, we review, we investigate, and we learn. This is all done so that we can prevent another death like this for the safety and health of the public. So once the court realizes that it can open the door to this privilege, then it needs to look at the factors to see whose rights am I trying to protect here, and we have a balancing test. Now I know the plaintiff's bar and my opponent will argue to you that discovery, we need to get to the truth. And it's more important that discovery allows the truth and the dissemination of information to the plaintiff's bar. But that's not really what this is about because this is a negligence case. And the plaintiff has available to it all the witnesses, all the caseworker's files, everything the plaintiff could ever need or want to prove negligence. It will get a consultant. It will then go before a jury and try to prove negligence on the part of One Hope United. What are we keeping from the plaintiff so that the plaintiff cannot get to the truth? I would submit, Your Honor, that the plaintiff's bar wants, quote, the smoking gun, close quote. They are hoping that in these reports there's something that says, we made a mistake. We should have done it better or at fault. And hoping to have that type of admission, they will then use it in discovery by impeachment to try to prove negligence. They don't really need it to prove their case, and that is why you have to weigh the private factor of one individual's right to recover versus the public good that would be served by this candid, free-flowing information that's done by my agency after a loss. Because they are doing this investigation from an exposure point of view, insurance, or I know it's been suggested, why don't you just send it to an attorney and cloak it that way. Well, you and I know the attorney would tell you, put nothing down. So that's not the purpose of these reports. If you take a look in the record at page 339, which is the shell of what the peer review packet consists of, we've been very careful not to discuss the packet because I don't want to waive what I believe is a privilege. But if you look at 339, it tells you exactly what the report will look like, who was involved in it, how it was done by a committee, and it says there was an expectation of confidentiality. So when you bring in the case workers and when you bring in the staff and you ask them what happened, how did this child die, they can be candid. There can be a free flow of this information. If they feel that it's retaliatory, that this would lead to a big judgment, if they could be fired, then there's going to be a chilling effect. So when you look at the four-part test, which has been discussed ad nauseum in all the cases, the slippery slope, in my opinion, is usually the third prong, which is the chilling effect prong. Because if you are the police department, it's not correct to say, well, we would never investigate this anyway. It's not true. But in our situation, the not-for-profit, which is putting together this committee in order to foster safety and health to see what happened, can there be a candid exchange of information and there won't be any retaliation. We're only likening it to the Medical Studies Act. We're only likening it to morbidity meetings, that you know that there's no way that we can improve health care if the doctors can't candidly and freely exchange what happened and even criticize one another, with the expectation that that would be kept privileged from the plaintiff's part. May I ask you this? You raised the issue of concerns about chilling effect and whether or not the employees and others here would be candid in their discussion about what happened. Can you address the Child Death Review Team Act that requires that after a death, the professionals from disparate disciplines and agencies who are responsible for children should share their expertise and knowledge that the goals of determining the cause of children's death and preventing future deaths can be achieved. So in other words, whatever is going to happen internally at One Hope, there will be an investigation in which One Hope will have to participate and discuss what happened and to make recommendations looking into the future. I would love, Your Honor, to be under that Act. That Act has only been held to protect the DCFS findings. So they prepare the same type of report. What do you mean by that? Doesn't the statute say that participating in that evaluation includes all the social service agencies? Yes, that is the report that the DCFS has because of accreditation and licensing. They will investigate it as well, and they will call us to participate in that peer review. That report is privileged. The DCFS has already produced its files, and it didn't produce that report because they have the statute, but we don't. My point is that whether or not there is we're concerned here about balance. Sure. And you're saying that unless there's a privilege, there would be not an incentive for the agency to review what took place and to make changes ultimately for the protection of children. But I'm suggesting and saying there is this Act that one way or another, whether or not One Hope has this privilege or not, there will have to be an investigation that One Hope participates in. There's many investigations. The police investigate. The DCFS investigate. The Department of Human Services investigates. What we're trying to keep privileged is the internal investigation that's totally voluntary just by One Hope, that's attended just by One Hope for their own continuation. It's not a fear of any criminal charges. It's not a fear of licensing, accreditation, or having their licensing pulled. It's a voluntary thing that they participate on internally that we're asking to be protected. Because there are other acts, the Mental Health Act, the Human Rights Act, the Child Team Act, those reports are not produced. And so if you're suggesting to me that when we go in and we give this information to DCFS that somehow we can cloak what we say in privilege of the courts of health, that that's not correct. That was not my point. The point was you were saying that there would be a chilling effect, that the agency itself would not want to evaluate itself. Again, what are we talking about? Protection of children. That seems to be the purpose. Right, and for the agency itself not to be fearful of the accreditation or the licensing or the funding, but just internally. What happened? How can we prevent it? Let us candidly discuss what happened. There won't be any retaliation. This is something that's voluntary. It's not a federal mandated requirement. It's nothing that they have to do. It's what they want to do, and they do it very quickly in order to promote safety and health. And since this decision has come down, there has been a chilling effect. I have been reached out by my defendants who say, what should we put down? Maybe we'll just gloss over what happened, just put down some facts because that's all we have to give up are the facts. That's not the true meaning of these reports, of this peer review. And I believe that when you balance that versus the plaintiff's need for what? There are no facts in these reports that the plaintiff doesn't have available. There are no persons that the plaintiff cannot depose. But the process itself, we would suggest, should be protected under the self-critical analysis. Counsel, hasn't this court traditionally looked at new evidentiary privileges as one that should be taken up as a legislative function? It would be wonderful if we had the opportunity and the strength and the lobby and the persons behind us and the funding to make a stab at getting a change, not only on this privilege issue, but on a lot of issues involving my agencies. Because we aren't protected by the court of claims. We're not protected by the cap. We're not protected by sovereign immunity. We're not protected by not-for-profit being a municipal corporation. We argued that about ten years ago in front of this court rule that there was a very strong test that we would have to meet for servicing the public, and we could not meet that. What I'm suggesting is there might be a need for a complete legislative look at these types of caseworkers or these types of agencies. But we don't have the ability to do that, and this court can give me or give the agencies this privilege of common law. It certainly can exist. If Breedis came down in, I believe it was in 1973, and it took nine years for the legislature to finally get the Medical Studies Act in between until it was codified the privilege was allowed in common law. So I think the small step that we need to take without dealing with caps and all these other immunities is discretionary immunity at this level on the privilege. And we've likened it to subsequent remedial repairs. I'm not suggesting by any means that it is a subsequent remedial repair because sometimes the evaluation doesn't even get into that point of what we do to correct it. Would the privilege be limited to discussions that occurred after the incident giving rise to the litigation? Yes. We're not seeking any pre-accident investigation to be protected. We really are looking for the discrete incident, which is the death case, the accident, and all of the deliberation in connection with that, and the process be privileged. That's really what we're asking for. It's in this discovery packet because there is this expectation of privacy, and I do believe that the public interest in this case far outweighs the private interest in this one death case because we're trying to prevent future death cases. And I'm not trying to be lack of sympathy to a family that loses a child because it's a terrible incident, but I think this is really an excellent case to take a look at with the balancing test. We have the case where the mother isn't going to be recovering. The father isn't going to be recovering. We've got a public guardian promoting a sister that's trying to recover financially, and all I'm suggesting to the plaintiff's bar is where is your necessity? That's what the courts usually send it back to the trial judge for. When you take a look at the cases involving privilege, it's not only the burden of the defendant who's seeking to protect, but the plaintiff, where is the necessity for this information? How are you prevented from proving your case? Where is the prejudice to you? This isn't about truth. We're not Ford Motor Company and the Bueller decision where we withheld information and lied. You will have all the truth and everything that you need. You will just not have the subjective comments of the defendants in this privilege review board where they may candidly say, we could have done better. We should have done better. Maybe there's another way to do that. Those words will be used for impeachment purposes, and that's what we're asking the court to weigh with the policy of subsequent remedial repairs, with the policy of the state to protect the public and the safety of the children. We are asking the court to open the door slightly for the privilege, and if you feel that on my record there are not enough facts to give me this privilege as a matter of law, we would ask the court to remand it to the trial judge with guidance so the trial judge can then do what they do, which is rule on evidentiary and privilege issues. That's what they rule on every day in discovery. Thank you very much for your time. Just one question. Sure. Procedure. To me it's unclear from the briefs whether one hope removed and returned the child to the mother or whether they made recommendations to the court and it occurred pursuant to a court order. Do you know which? We were hired by the DCFS to oversee the mother and to help her mentally and other family ways to keep the family intact. The plaintiff accuses the defendant of not doing more, of getting the child out of the home. The DCFS is who put it in the home. The DCFS is who removes it from the home. It is not something One Hope United can do or should do. It can only make recommendations. Was there a court order placing the child back in the home? The child died, sir. So there was no placing it back in the home. And then I believe the sister was removed. And then the child died. And is the ward. Excuse me? Before the child died. Was there a court order placing the child back in the home? No, the DCFS had put the child with the mother and we as the caseworker went out every week and to see if the child was thriving and if there were any signs of any problems. But that really gets to the merits of the case, the defense of the case, which I don't think is an issue in this appeal in all due respect. Just one more question. Sure. Counsel, you made the comment that if the subjective comments would have been, we could have done better, we should have done better, that should be privileged. And you said, what's important about the report to the plaintiff? What about that same person who made those subjective comments on the stand saying that there was nothing else we could have done? Should not the plaintiff have a right to impeach the witness? Sure, and the plaintiff has deposed the caseworkers and asked them that very question and has the right to impeach them if they can based on a prior statement and deposition. But I don't believe it should be able to take the report and say that's an inconsistent statement and we should be able to impeach it because the purpose of the report far outweighs the impeachment. And if you look at Provena and if you look at the Newark decision which we cited, the court had indicated when all you're trying to do is impeach credibility or if all you're trying to do is to cross-examine, those aren't the necessities that the plaintiff bar needs to prove to overcome the privilege. So this has already been addressed, in my opinion. I don't think that would be exceptional enough, but it is a qualified immunity. It's not an absolute immunity like the Medical Studies Act. And there is wiggle room if the plaintiff's bar can come forward and prove and explain why do I need this report in this one given case. I don't think the plaintiff can meet that burden. Thank you very much. Madam Chief Justice. Counsel. Justices. Counsel to the appellant. May it please the court. I am Gary W. Cleggis and I represent Robert F. Harris, the Cook County Public Guardian and administrator of the estate of Marshauna Philpott in this action. We are here today to decide the issue of whether there is proper justification for the creation of a privilege that does not exist in the common law of Illinois, in the legislative acts of Illinois, or in any decision in Illinois, quite frankly. The decisions of this court are clear that generally the legislature is the best branch of government for the creation of privileges. And the issue is, number one, does the court have or should it create this privilege? And number two, whether the privilege should be applied in this case based upon the four-pronged test set out in the Homer decision. It is the position of the plaintiff, a colleague, that this court should not create the privilege due to the fact that the privilege just never existed in the common law of Illinois. One argument that's been made by the appellant in this case is that Illinois Supreme Court Rule 501 gives the court the right to create the privilege. I strongly disagree. Illinois Supreme Court Rule 501 simply gives the court the right to administrate common law privileges that exist. And there is no privilege that existed in the common law in Illinois, in any legislative act in Illinois. And in fact, there are two decisions out of the Second District that hold that this privilege does not exist under the law of Illinois. Isn't it true, Mr. Klages, that if the defendant in this case had not engaged in this self-critical analysis process for improvement, there would be no either admissions or opinions for you to discover? Quite frankly, Justice, I don't know what is in that report. But if they hadn't done anything, there wouldn't be a report, is that correct? That is correct. Is that an issue that we should be concerned with as far as public policy, as to whether or not we should encourage this type of a review? I don't believe that that, quite frankly, is an issue in this case, due to the fact there is no such privilege that exists at this point, and I do not believe that there is any justification for the court to create such a privilege. If you have all of the facts that are available, why do you need the opinion or the suggestion for improvement? We need the facts so that we can investigate the death of an eight-month-old girl. The public policy of the state has set forth in the legislative act the Child Death Review Team Act, sets the public policy as a full investigation of the death of children, and I believe that that should be a basis for this court to order that this report be turned over in the first place. And it does set the state's public policy with regard to the issue of full disclosure involving the death of a child such as we have here. If we agree with you and believe that there should be no such privilege created, should there be any limitations, or can there be, by the trial court on how this report is used? If you send the case back to the trial court, of course the trial court could determine whether the report could be used. However, obviously the court has to decide that there is a privilege in the first place before it could be returned to the trial court, and it's our position, the position of the appellee, that this court should not, in fact, create a privilege due to the fact that no such privilege has ever existed in the state of Illinois and that the general trend throughout the country is not to create a privilege like this. My question really was, if we do not create the privilege, does not the trial court still have the opportunity to limit the way in which this report and the information in there is used in the actual trial? Yes, I think the trial court does have that right. To return to my argument and to answer several questions that the justices presented, obviously the Medical Studies Act provides no basis for the creation of this privilege. The Medical Studies Act is limited to hospitals only. It's clearly not applicable here. Likewise, Illinois Supreme Court Rule 501 provides no basis for the creation of the privilege either, because 501, as I indicated earlier, is simply a rule of evidence that allows the court to interpret common law privileges. No privilege in the common law existed in Illinois for self-critical analysis. What this case really is about is full disclosure regarding the death of an 8-month-old girl, and to establish a privilege like this would prevent the plaintiff's bar from determining and finding relevant evidence so that a full investigation as to the death can be made. The information that we seek could be used to cross-examine people from One Hope United as to what they told DCFS initially and now makes a different statement in their report, this peer review packet report, which would be critical evidence to the plaintiff to make a determination as to what really happened in the death of this young child. I guess it seems to me that if you're wanting to use that information for what happened in this case, that was entirely appropriate. The concern I have is, are you wanting to use the report, which might talk about post-remedial measures to make sure this doesn't happen in the future, that that should be admissible? Well, post-remedial measures has been the law of the state for many years and could have been used as a basis to create the privilege under other contexts. It could have been used by the court below to create that privilege, but they felt that it was not a basis to create a privilege such as this. So you think if we say that it can't be used for post-remedial discussions, is that the same as saying there's a privilege? No, I think that a privilege is much more encompassing and has more of a chilling effect as to relevant evidence that can be obtained. Which goes back to my other question. If we say there is no privilege and you have all of the information, but some of the information in that report are discussions about post-remedial measures, is that admissible in your case once we say there's no privilege? That would be a decision that the trial court would make, yes. If we agree with you that there is no privilege, would it discourage agencies such as One Hope United from doing post-incident reviews? There has never been an expectation that post-remedial reviews would be privileged in the first place. And that's why it doesn't fall into the Homer four-prong test. For one reason, there has been no privilege. So their assertion that somehow their discussions would have been kept confidential has no basis in Illinois law. The fourth prong of the test seems to indicate that their need to have these privileged conversations trumps the need to have full and complete investigation of this child's death, which we do not believe is the public policy of this state. We do not believe it should be the public policy of this state. And we believe that the act that I cited earlier, the Child Death Review Act, sets the public policy of this state for full investigation of the circumstances of this child's death and not to shroud certain opinions, if you will, with the cloak of this privilege because the public policy of the state is clear under this act that full investigation of the death of children is warranted. But if this self-critical analysis were done by DCFS, that would be shielded, is that correct? That would be shielded, but DCFS didn't do this investigation. I realize that, but for many years they did. I've been around long enough that I can remember those years. So this is really kind of a new day when they subcontract with agencies to provide these types of services. But even in the view of it, you believe that it would not be appropriate to create such a privilege. I do, and that is the position of the appellee. As I indicated to you, the vast trend in this country seems to be moving away from this privilege. I've cited various cases from other states, other federal districts that is moving away from this privilege. The states of Michigan, the states of California, the states of Oregon refuse to recognize this privilege. It seems that the only federal district that seems to be hot after recognizes privilege is the 7th district. And I cited a number of cases throughout the country. The slaughter case, Eastern District of Pennsylvania, the Craig case, Middle District of Pennsylvania, the Alaska Pension Fund case, 3rd Federal District, Fisher v. Borden, the U.S. District Court in New Jersey. And as I said, the cases in the state of Michigan and the states of California, Oregon, that all are moving away from this privilege and saying that no such privilege exists. And as a result, the trend is to not recognize a self-critical analysis privilege. Why? Because the truth-seeking function of the court is paramount. It is not an important function of the court to protect limited communication such as this by granting these types of privileges. And as a result, I believe that the court here should follow these types of decisions and rule that the truth-seeking function of the court is so important that no such privilege, such as a self-critical analysis privilege, should be recognized. Of course, that argument is being made in connection with this case. Do we, as a court, need to take into consideration the policy as to how this affects the betterment of services to children in general? I think the court should take that policy into consideration. Absolutely. Do you think the court has the power to create something that the legislature has deemed not to create thus far? Obviously, in the Homer decision, there was a creation of a privilege. That, however, was a very limited set of facts and would not have the overall chilling effect that this case, if you found a privilege in this case, would create. The Homer decision by the court in creating that limited privilege, and that was a labor bargaining privilege, labor bargaining case, found that under the facts of that case, the information created during the labor bargaining process was very important. But in this particular case, you're dealing with the death of an eight-month-old girl, and we believe that the facts of this case and the chilling effect that this type of privilege might have as to determining the actual reason for this child's death is so important that no such self-critical analysis privilege should be warranted. Does that answer your question? So for those reasons, I believe that... So, of course, your argument suggests that there might be cases where it is important. If it's this case, it's important that you get to the fact-finding process. Is that true? I think that there are cases that could arguably be a basis for a privilege, but in this particular case, I don't believe that these facts should be a basis for the creation of a privilege. In conclusion, I believe that Your Honor should affirm the decision of the First District Appellate Court and find that no self-critical analysis privilege exists in the state of Illinois. If there's no other questions... It doesn't appear there are any other questions. Thank you, Counsel. Thank you, Your Honor. Thank you, Justice. First, I acknowledge that I did not acknowledge my counsel this morning, so I didn't want to in any way be rude in the record. In rebuttal, let's talk about trends. Last night when I came into the hotel, I put on my bed all the cases on this case, and I had more cases that had the privilege than less. But as far as trends are concerned, for every state they cite, we cite another state. Let's just look at Illinois to see that the trend in Illinois has been in favor of the privilege. This Court doesn't have to worry about trends. This case of first impression, state case, this Court can do whatever it wants. It should be possibly influenced by some of the cases in Illinois, particularly because my agency can be sued in diversity, and it also does business in other states. I think there's just a tremendous confusion about whether it can give this report depending on what state it's in. That has to do also with the issue of expectation. Counsel has suggested that this report can't be privileged because at the time there wasn't this privilege at the time. The case workers don't know anything about privilege or admissibility. They just know that they're being asked to give the truth and to be critical and be candid. And that's all the expectation that's needed for this privilege to be enforced. We don't really think about admissibility. That's the problem with defense attorneys, attorney-client work product. We're thinking can it be admissible in court? Can we use it at trial? I'm not suggesting that this be given any credibility to go as far as a trial judge because we all know from subsequent remedial repairs we've got inconsistent decisions all over the place, which is why this court did not initially put Rule 407 in the initial handbook in 2010 because it was waiting for its decision to see whether or not, I think it was Jablonski, how the court was going to deal with 407 in a product setting. And now there is a draft of this rule. So we all know that there's a lot of error that's made at the trial level on admissibility of post-subsequent repairs. We're not looking at this really as an evidentiary ruling for trial. We're looking at this as a discretionary immunity for discovery. We don't believe that this should be given up at all and it should not be decided by the trial court if it can be used or not. As far as Burkett is concerned, the problem with those decisions were that the respondent that was seeking to quash the discovery was trying to get exceptions or exemptions from already existing acts. Either had FOIA or you had the Medical Studies Act. That's not what we're asking in this case. We're not asking for any exemptions whatsoever, which is what the second district was faced with. If you take a look at the Burkett decision, when it talked about the privilege, it sent the case back down, so did Homer, excuse me, not Burkett, Homer, and Chris sent the case back down to the plaintiff to say, where is your necessity for this information? All I've heard this morning is about the necessity for truth and investigation. There's been an investigation and the truth comes out in discovery because they're going to ask all the witnesses what happened. And my defendants aren't going to be opinion witnesses anyway because the plaintiff is going to retain opinion witnesses. My defendants can't give opinions on facts that are all hearsay. The people on the quality review are not involved in the incident. They only hear the facts from the case workers. So they're not fact witnesses and they're not really opinion witnesses because we don't make them opinion witnesses. So we're all talking about evidence and admissibility and what will go in and what won't go in. And all my One Hope United wants to know is can they continue to make these reports? Can they do them quickly? Can they do them before there's a loss? Can they do them before they tell an insurance company? Can they do them before they hire a lawyer? And can they bring in everybody from all walks of life who were involved in the case to give a truthful, candid statement of what happened? They're not worried about the control group. They're not trying to protect it by just the top people. They bring people of all walks of life. That's what happens at the morbidity meetings too. It's the staff. It's the technicians. It's the janitors. Everybody comes in and they're truthful. And we really need to keep that candid free flow opportunities because otherwise, one, the agencies will not be able to function, or two, the agencies will close down, or three, the agencies won't do these reports. And that's what my fear is, is the chilling effect that they won't do these reports if they think everything they say or do will then be admissible in court. Now, we had an opportunity in Illinois to pass the I'm sorry statute, if you recall. And that was thrown out by this court because of the non-economic damage aspect to it. But even then, there was some question about can't doctors be able to say after an incident, I'm sorry, and give a subjective opinion about what happened? That's not done because they're worried about lawsuits. That's done because that's the right thing to do. And they get protected or they should be protected. That was the policy of the state. And all I'm suggesting for the truth of safety, promoting health, protecting the next child who is killed and the mother leaves the room, the child is drowned, that we want to avoid this. And my nonprofit, which believes that investigation, review, and learning should be allowed to make out these reports and keep them privileged from the plaintiff's bar. The truth will come out. The plaintiff has all the case workers, all the fact witnesses, and even the records of the DCFS. They have everything. The DCFS can protect its peer review. We're doing what the DCFS does internally, and we cannot. So I would ask the court to please open the door in this limited case. And if it cannot rule as a matter of law based on what's in the record, that we do not have to produce the document or the packet, then remand it to Judge Brewer, who I know is very anxious, to get some guidance from this court so that she can then weigh the party's interests and decide whether or not we have to produce this. Ms. Schwartz, will this opinion stand if we go your way? Will this opinion stand for the proposition that if groups come before us without the wherewithal in a situation which we would normally defer to the ruling from this court? I think you've always had the door open. I mean, Homer's always said from day one that you can create a privilege without a statute, but there are factors you have to consider. So are you going to protect restaurateurs who come in and say, we investigated an accident and our documents are privileged? You and I both know that's not what they protect them from. They're not trying to improve. They're just writing a report. Those aren't privileged. So we're really asking for a very narrow privilege in this case for peer review in a very specific setting, and then once the door is open and the factors are discussed, it will be looked at as a case-by-case basis. But I do believe until there is a statute that this court at common law has the right, the power, the authority, and the responsibility, this is your legacy. This is your legacy today in 2015 to make this happen in Illinois, and this court has done wonderful things over the years that has changed the law, and we can change that because this case is crying out for the change. Thank you very much for your time. Thank you. Case number 117200, Robert F. Harris, et cetera, et al., versus One Hope United, Incorporated, will be taken under advisement as agenda number four. Ms. Schwartz and Mr. Klages, thank you for your arguments today. You are excused at this time.